UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT VIALL,

                              Plaintiff,

  -against-                                                  1:05-CV-527
                                                                 (LEK/RFT)
MICHAEL J. ASTRUE,[1] Commissioner of
Social Security,

                              Defendant.
_____

## DECISION AND ORDER

**I.    BACKGROUND**

    **A.    Procedural History**

Plaintiff Robert Viall ("Plaintiff") protectively filed an application for Supplemental Security Income ("SSI") on October 25, 1999. Administrative Transcript ("AT") 98-99, 100 (Dkt. No. 9). The application was denied initially and on reconsideration. AT 25-28, 31-34. A request was made for a hearing. AT 35-36. A hearing was held before an Administrative Law Judge ("ALJ") on November 6, 2000. AT 379-404. In a decision dated February 12, 2001, the ALJ found that Plaintiff was not disabled. AT 59-66. Upon Plaintiff's request for review, the Appeals Council issued an Order dated July 26, 2002, remanding the matter back to an ALJ. AT 79-83. A supplemental hearing was held on March 4, 2003. AT 405-36. On May 15, 2003, the ALJ issued a decision finding that Plaintiff was not disabled. AT 11-22. The Appeals Council denied Plaintiff's request for review on February 25, 2005. AT 3-6. Plaintiff commenced this action on April 29, 2005 pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner's final decision. Compl. (Dkt. No. 1).

---

[1] The Complaint named Jo Anne B. Barnhart as Defendant, then the Commissioner of Social Security. On February 12, 2007, Michael J. Astrue assumed that position. Therefore, he shall be substituted as the named Defendant pursuant to Fed. R. Civ. P. 25(d)(1).

**B.    Contentions**

Plaintiff makes the following claims:

(1) The ALJ failed to give appropriate weight to Plaintiff's subjective complaints of symptoms and failed to recognize the severity of Plaintiff's anxiety disorder.  Plntf's Brief (Dkt. No. 10) at 18-21.

(2) The ALJ erred by relying on the testimony of the vocational expert ("VE").  Plntf's Brief at 21-23.

(3) The ALJ failed to consider Plaintiff's impairments in combination.  Plntf's Brief at 23-24.

(4) The ALJ's decision is against the substantial weight of the evidence and is incorrect. Plntf's Brief at 24-25.

Defendant argues that the Commissioner's determination is supported by substantial evidence in the record, and must be affirmed.  Deft's Brief (Dkt. No. 11).

**C.    Facts**

**1.    Non-Medical Evidence**

Plaintiff, who was forty-three years old at the time of the supplemental hearing, lives with his mother. AT 124, 408.  Plaintiff obtained his high school degree and underwent training in auto body repair. AT 113, 384.  Plaintiff last worked on a seasonal basis as a laborer/park aide at a golf course. AT 108, 388.  He previously worked as driver and assembly worker. AT 108.  He last worked on November 11, 1998 because it was the end of a seasonal job. AT 107.  He alleges disability due to short bowel syndrome.[2]  Id.

---

[2] Short bowel syndrome is a group of problems affecting people who have had half or more of their small intestine removed.  Symptoms include diarrhea, cramping, bloating, and heartburn.  Short bowel syndrome is treated through changes in diet, intravenous feeding, vitamin and mineral supplements, and medicine to relieve symptoms. National Digestive Diseases Information Clearinghouse, http://digestive.niddk.nih.gov/ddiseases/pubs/shortbowel/ (last visited January 31, 2008).

**2.    Medical Evidence**

**a.    Physical Condition**

In 1977, Plaintiff apparently underwent an appendectomy and small bowel resection. AT 114, 162, 173, 210. The small bowel resection was apparently due to a "kink" in his intestine that resulted in gangrene. Id.

From June of 1995 to February of 2004, Plaintiff saw Steven Balsamo, D.O., who he identifies as his "general doctor." AT 152-58, 229-46, 291-308, 329-37, 351-65, 391-92. Dr. Balsamo noted Plaintiff's complaints of, *inter alia*, "stomach problems," shoulder pain, back pain, shortness of breath, blurred vision, dizziness, hyperlipidemia, and possible seizures. Id. Dr. Balsamo prescribed various medication, gave Plaintiff a cortisone injection in his right shoulder, discussed smoking cessation, and administered periodic shots of vitamin B-12. Id.

Dr. Balsamo referred Plaintiff to James Litynski, M.D., who Plaintiff identifies as a gastrointestinal specialist. AT 154, 391-92. From June 30, 1998 to August 12, 2003, Plaintiff saw Dr. Litynski. AT 160-94, 199-200, 210-12, 309-10, 326-28, 338-50. Dr. Litynski noted Plaintiff's complaints of heartburn, diarrhea, and weight loss. Id. He diagnosed Plaintiff as suffering from, *inter alia*, short bowel syndrome, with diarrhea, and mild peptic esophagitis.[3] Id. Dr. Litynski treated Plaintiff with various medications. See AT 167, 169, 171, 174, 179, 181, 184, 212.

On July 27, 1999, Dr. Litynksi noted that Plaintiff was having difficulty performing his job due to his need to make frequent trips to the bathroom. AT 181. He opined that Plaintiff "could work, but his work would have to be within close proximity to toilet facilities." Id. Similarly, on June 13, 2000, Dr. Litynski found that Plaintiff "should be able to do work as long as he will be allowed frequent access to toilet facilities." AT 200. However, on August 6, 2001, Dr. Litynski

---

[3] Esophagitis is the inflammation of the esophagus. Dorland's Illustrated Medical Dictionary 655 (31st ed. 2007).

3

opined that Plaintiff's short bowel syndrome "undoubtedly will make it very difficult for him to do most types of work." AT 210.

On October 26, 1998 and June 25, 1999, Plaintiff was seen at Seton Health Urgent Care for treatment of his left shoulder. AT 197-98. He was diagnosed as suffering from bursitis and tendonitis. Id.

From September 9, 1999 to September 20, 2002, Plaintiff saw Matthew Hall, D.D.S. AT 257-69, 278-90. Plaintiff was treated for generalized gingivitis and moderate periodontitis. AT 258. Dr. Hall noted, "To my knowledge, there have been no scientific studies done which would link periodontal disease to short bowel syndrome." Id. Dr. Hall instead attributed Plaintiff's condition to "poor oral hygiene and smoking." Id.

On January 18, 2000, Alan Auerbach, M.D., a state agency medical consultant, completed a "Non-Severe Impairment Checklist." AT 195. He indicated that the medical evidence did not show more than a slight abnormality in Plaintiff's ability to perform basic work related activities. Id.

From March 12, 2001 to July 2, 2001, Plaintiff saw Matthew Daily, M.D. for treatment of nasal obstructive symptoms. AT 213-18. Dr. Daily performed a nasal septoplasty. AT 215. Following surgery, Plaintiff was doing well and advised to return on an "as needed" basis. Id.

From May 31, 2001 to December 19, 2001, Plaintiff saw Michael Martynik, M.D., a urologist. AT 250-56, 271-77. Plaintiff complained of pain in his left testicle. Id. An ultrasound showed a small cyst in the left epididymis. AT 251. Dr. Martynik prescribed anti-inflammatory medication and recommended other conservative treatment measures. Id.

On November 22, 2002, Plaintiff underwent an internal medicine examination at the request of the agency by Susan Kerlinsky, M.D. AT 311-14. Dr. Kerlinsky diagnosed Plaintiff as suffering from short bowel syndrome with secondary anemia, chronic low back pain, asthma, and testicular

4

cysts. AT 314. Dr. Kerlinsky found that Plaintiff "is restricted from activities requiring strenuous exertion . . . and [from] heavy lifting and carrying. He should avoid smoke, dust, and known respiratory irritants." Id. She noted that Plaintiff's "complaints of pain are mostly consistent with the clinical and laboratory findings." Id.

In a Medical Source Statement form, Dr. Kerlinsky opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; had no limitations in standing and walking; must periodically alternate sitting and standing; and was limited in his abilities to push and pull using his upper and lower extremities to the extent that the weight must be less than fifty pounds. AT 315-16. Dr. Kerlinsky also found that Plaintiff had some postural and environmental limitations. AT 316-18.

### b. Mental Condition

Dr. Litynski's treatment notes contain references to Plaintiff's mental condition. See AT 162, 166, 173. He consistently noted that Plaintiff has a history of anxiety. Id.

On June 28, 2001, Plaintiff was seen at Saratoga County Mental Health Clinic. AT 220. A social worker noted that Plaintiff reported "a history of difficulties with anxiety," but that Plaintiff was taking no medications. Id. On July 11, 2001, the social worker noted that Plaintiff "appears to want an evaluation only to strengthen [his] disability claim." AT 221. On July 20, 2001, Plaintiff saw Dr. David, who diagnosed Plaintiff as suffering from generalized anxiety disorder; depression not otherwise specified; and personality disorder not otherwise specified. AT 226. Dr. David assigned Plaintiff a Global Assessment of Functioning ("GAF") score of sixty.[4] Id.

---

[4] The Global Assessment of Functioning ("GAF") scale considers psychological, social, and occupational functioning on a hypothetical continuum of mental health. Diagnostic and Statistical Manual of Mental Disorders 34 (American Psychiatric Association, 4th Ed. Text Revision 2000). A GAF score of between 50 and 60 indicates the existence of moderate mental health symptoms or moderate difficulties in social, occupational or school functioning. Id.

5

On December 17, 2002, Plaintiff was examined by Joseph Bernier, Ph.D. AT 319-23. After examining Plaintiff, Dr. Bernier questioned the reliability of information from Plaintiff, stating that Plaintiff "was not entirely forthcoming when presenting his history as evidenced by a seemingly more complete account of his police and psychiatric record contained in the referral material." AT 319, 321. Dr. Bernier also noted that Plaintiff's "recollection of his work history is imprecise." AT 319. Dr. Bernier diagnosed Plaintiff as suffering from anxiety disorder with some agoraphobic features and from undifferentiated somatoform disorder. AT 322.

In a Medical Source Statement form, Dr. Bernier indicated that Plaintiff's impairment has no affect on his abilities to understand, remember, and carry out instructions. AT 324. Dr. Bernier then indicated that Plaintiff's restriction in interacting appropriately with the public, supervisor(s), and co-workers is "none" to "slight;" his restriction in responding appropriately to work pressures in a usual work setting is "marked;" and his ability to respond appropriately to changes in a routine work setting is "moderate." AT 325.

## II.    DISCUSSION

### A.    Disability Standard

To be considered disabled, a plaintiff seeking DIB or SSI benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

6

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. Berry, 675 F.2d at 467 (citations omitted).

In this case, the ALJ found at step one that Plaintiff was not engaging in substantial gainful activity. AT 21. At the second step, the ALJ determined that Plaintiff's short bowel syndrome, anxiety disorder, agoraphobia without panic, undifferentiated somatoform disorder, complaints of chronic back pain, and dizziness are severe impairments. AT 18. At the third step, the ALJ concluded that those impairments neither met nor equaled any impairment listed in Appendix 1 of the Regulations. Id. The ALJ also examined Plaintiff's alleged mental impairment and found that Plaintiff had slight limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. AT 19. He found no evidence of episodes of decompensation or deterioration in work or work-like settings. Id. At the fourth step, the ALJ

found that Plaintiff retains the RFC to perform a limited range of light work.  AT 19.  The ALJ then found that Plaintiff is unable to perform his past relevant work.  Id.  At the fifth step, the ALJ concluded that there are jobs in significant numbers in the national economy that Plaintiff can perform.  AT 20-21.  The ALJ therefore concluded that Plaintiff was not disabled.  AT 21.

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing, *inter alia*, Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  Johnson, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988)(citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a

reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams, 859 F.2d at 258 (citations omitted).  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972); see also Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

### C. Consideration of Impairments in Combination

Plaintiff argues that the ALJ failed to consider his impairments in combination.  Dkt. No. 10 at 23-24.  Under the Regulations, an ALJ must consider the combined effect of all of a claimant's impairments "without regard to whether any such impairment, if considered separately, would be of sufficient severity."  20 C.F.R. §§ 404.1523, 416.923.  If a medically severe combination of impairments if found, the combined impact of the impairments will be considered throughout the disability determination process.  Id.  If no medically severe combination of impairments is found, a finding of no disability will be made.  Id.

In his decision, the ALJ reviewed the medical evidence of Plaintiff's various conditions in some detail.  AT 15-19.  The ALJ then determined that Plaintiff's short bowel syndrome, anxiety disorder, agoraphobia without panic, undifferentiated somatoform disorder, complaints of chronic back pain, and dizziness were severe impairments.  AT 18.  In then determining Plaintiff's RFC, the ALJ stated that he evaluated the medical evidence "as a whole."  AT 19.

To the extent that Plaintiff argues that the ALJ failed to consider "fully" his untreated anxiety, sleep disturbance, fatigue, and episodic problems with his shoulders, Dkt. No. 10 at 23, Plaintiff fails to explain how the ALJ failed to consider "fully" these conditions.  The ALJ

specifically noted that Plaintiff had received no treatment for his mental condition and that Plaintiff testified to experiencing fatigue.  AT 20.  Moreover, Plaintiff's own testimony belies his claims.  Regarding his mental condition, Plaintiff testified at the first hearing that he has no need for counseling because "all my trouble is medical." AT 403.  Similarly, at the supplemental hearing, Plaintiff testified that he is receiving no mental counseling, claiming that "it doesn't help." AT 415.  However, he then stated that his mental health "is okay." AT 416.  Regarding sleep disturbance and fatigue, Plaintiff testified at the supplemental hearing that he is able to sleep "[p]retty good [sic]." AT 417.  Regarding his shoulders, Plaintiff stated at the first hearing that his shoulders "lock" "once or twice a year." AT 402.  At the supplemental hearing, Plaintiff stated that his shoulder was "[n]ot too bad" and that his shoulder is "not severe enough that I have to go get the shot." AT 418.  The Court further notes that as discussed later, the ALJ's determination that Plaintiff was not totally credible regarding his symptoms is supported by substantial evidence.  See infra Part II.D.  Accordingly, the Court finds Plaintiff's claim unavailing.

### D.     Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting Gallardo v. Apfel, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record.  See 20 C.F.R. §§ 404.1529, 416.929; see also Foster v. Callahan, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence,

whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a), 416.929(a).  Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work.  Id. §§ 404.1529(c), 416.929(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  Id. §§ 404.1529(c)(3), 416.929(c)(3).

In his decision, the ALJ found that Plaintiff's complaints of disabling pain and symptoms were not fully credible.  AT 20-21.  In determining Plaintiff's credibility, the ALJ reviewed and discussed the following relevant factors: Plaintiff's daily activities; the location, duration, frequency, and intensity of Plaintiff's symptoms; precipitating and aggravating factors; the type and effectiveness of medication taken to relieve symptoms; other treatment received to relieve symptoms; and measures taken by Plaintiff to relieve symptoms.  Id.

The ALJ also pointed out that the reliability of Plaintiff's statements was questioned by various sources.  AT 17.  For instance, the ALJ pointed out that when evaluated by Saratoga County Mental Health Clinic, it was noted that Plaintiff "appears to want an evaluation only to strengthen

11

[his] disability claim." AT 17; see AT 221. Moreover, Dr. Bernier questioned the reliability of information from Plaintiff, AT 321, finding that Plaintiff "was not entirely forthcoming when presenting his history as evidenced by a seemingly more complete account of his police and psychiatric record contained in the referral material." AT 319. Dr. Bernier recommended psychiatric/psychological treatment for Plaintiff, but only if Plaintiff "is accurately reporting his level of distress and symptoms." AT 322. Similarly, Dr. Kerlinsky did not find Plaintiff totally credible. She noted that Plaintiff's complaints are "mostly consistent" with clinical and laboratory findings. AT 314. The Court notes that an ALJ must consider any statements by a claimant and other persons concerning the claimant's symptoms. Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *5 (SSA July 2, 1996).

To the extent that Plaintiff argues that the ALJ erred by failing to consider that anxiety exacerbates his short bowel syndrome, this claim is unavailing. See Dkt. No. 10 at 20-21. The ALJ specifically noted in his decision that Plaintiff alleged that "stress and physical activity set off his abdominal problems and he tries to avoid stress." AT 21. Moreover, the Court points out that the RFC determination provides for "low stress work." AT 19. Further, Plaintiff's claim is belied by his own testimony. As noted, at the first hearing, Plaintiff stated that he has no need for counseling because "all my trouble is medical." AT 403. Similarly, at the supplemental hearing, Plaintiff testified that he is receiving no mental health counseling. AT 415. He explained that his mental health "is okay." AT 416.

In light of the foregoing, the ALJ's determination of Plaintiff's credibility is supported by substantial evidence. The ALJ discussed the relevant factors set forth in the Regulations, and noted that the reliability of Plaintiff's statements had been questioned.

**E.     RFC**

RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations which go beyond the symptoms. Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (Hurd, D.J.); see 20 C.F.R. §§ 404.1545, 416.945.  "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations." Smith v. Apfel, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (citation omitted).  In assessing RFC, the ALJ must make findings specifying what functions the claimant is capable of performing, not simply making conclusory statements regarding a claimant's capabilities. Martone, 70 F. Supp. 2d at 150.  RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy. New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); see 20 C.F.R. §§ 404.1560, 416.960.

In this case, the ALJ determined that Plaintiff could perform a limited range of light work.[5] AT 19.  Specifically, the ALJ found the following:

> [Plaintiff can] perform light work with further limitations of changing positions as needed[;] no exposure to odors, gases, fumes, dust, poor ventilation, and temperature extremes; no exposure to machinery or heights[;] no climbing ladders, stairs, or any required climbing; few, if any, changes in the work setting; no required traveling alone; low stress work; can do simple work-related decision making but no required scheduling or planning[;] and access to restrooms.

AT 19.

In determining Plaintiff's RFC, the ALJ stated that he "consider[ed]" certain pieces of

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

13

medical evidence that suggests mildness, improvement, or resolution of certain conditions.  AT 19.  Nevertheless, the ALJ failed to explain on what specific evidence he relied in determining Plaintiff's RFC.  Pursuant to SSR 96-8p, the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  SSR 96-8p, 1996 WL 374184, at *7 (SSA July 2, 1996).  Similarly, in an Order dated July 26, 2002, the Appeals Council directed the ALJ to "[g]ive further consideration to the claimant's maximum [RFC] . . . and provide rationale with specific references to evidence of record in support of the assessed limitations (Social Security Ruling 96-8p)."  AT 82 (emphasis added).  Here, the ALJ erred by failing to provide a narrative discussion describing how the evidence supports each conclusion.

Moreover, the ALJ failed to state what weight he attributed to the opinion of Plaintiff's treating physician, Dr. Litynski.  As specified in the Regulations, the opinion of the claimant's treating doctor is considered controlling as to the nature and severity of a claimant's impairment, provided it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  20 C.F.R. § 404.1527(d)(2).  An ALJ must give "good reasons" for the weight assigned to a treating source's medical opinion.  20 C.F.R. § 404.1527(d)(2); see also SSR 96-2P, 1996 WL 374188, at *5.

While Dr. Litynski's earlier opinions suggest that Plaintiff could work provided he was allowed frequent access to toilet facilities, AT 181, 200, on August 6, 2001, Dr. Litynski opined that Plaintiff's short bowel syndrome "will make it very difficult for [Plaintiff] to do most types of work."  AT 210.  The ALJ erred by failing to state the weight he assigned to this opinion.

In addition, the ALJ erred by failing to explain what weight he assigned to the opinions of the other medical sources.  See 20 C.F.R. § 404.1527(d), 416.927(d) ("Regardless of its source, we

14

will evaluate every medical opinion we receive.  Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.").

The ALJ's failure to explain the weight he assigned to the medical opinions was in contravention to the directions of the Appeals Council, who instructed the ALJ as follows:

> [E]valuate the treating and examining source opinions of Dr. Litynski (Exhibit 4F, p.3, Exhibit 8F, p.2, <u>and the opinion dated August 6, 2001</u> submitted with the request for review) and Dr. David (the GAF score in the psychiatric evaluation dated July 20, 2001 submitted with the request for review), and the nonexamining source opinions of the medical consultants for the state agency (Exhibits 5F, 6F), pursuant to the provisions of 20 CFR [§] 416.927 and Social Security Rulings 96-2p, 96-5p, and 96-6p, <u>and explain the weight given to such opinion evidence</u>.

AT 82 (emphasis added).

In light of the foregoing, the Court is unable to conclude that the RFC determination is supported by substantial evidence.  While the ALJ reviewed the medical evidence in some detail, he failed to explain on what specific evidence he relied in determining that Plaintiff could perform a limited range of light work and failed to state the weight given to the opinions of the medical sources.

### F.    Vocational Expert Testimony

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner at Step Five to prove that a job exists in the national economy which the claimant is capable of performing.  See <u>Curry v. Apfel</u>, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. §§ 404.1560(c), 416.960(c).  Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions in the country.  20 C.F.R. §§ 404.1566(a), 416.966(a).  In making this determination, the ALJ may apply the grids or consult a VE.  See <u>Rosa v. Callahan</u>, 168 F.3d 72, 78

(2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2.  If the claimant's characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he or she is disabled.  Pratts v. Chater, 94 F.3d 34, 38-39 (2d Cir. 1996).  However, if a claimant suffers from non-exertional impairments that "significantly limit the range of work permitted by exertional limitations," the ALJ should elicit testimony from a VE to determine if jobs exist in the economy that the claimant can still perform.  Id. at 39 (quoting Bapp v. Bowen, 802 F.2d 601, 605-06 (2d Cir. 1986)); 20 C.F.R. §§ 404.1566(e), 416.966(e).  The VE may testify as to the existence of jobs in the national economy, and as to the claimant's ability to perform any of those jobs, given his functional limitations.  See Colon v. Comm'r of Soc. Sec., No. 6:00-CV-0556, 2004 WL 1144059, at *6 (N.D.N.Y. Mar. 22, 2004) (Sharpe, J.).

In this case, the ALJ elicited the testimony of a VE at the supplemental hearing.  AT 425-36. The ALJ asked the VE to consider an individual of Plaintiff's age, education, past relevant work, and RFC.  AT 429-31.  The VE testified that such an individual could work as an assembler of small products, order clerk, and surveillance system monitor.  AT 432-33.  Based on the VE's testimony, the ALJ concluded that Plaintiff was not disabled.  AT 21.

### 1. Instructions from Appeals Council

Plaintiff argues that the ALJ failed to follow instructions set forth in the July 26, 2002 Order of the Appeals Council.  Dkt. No. 10 at 22.  Plaintiff points to the following instruction:

> [B]efore relying on the vocational expert evidence the Administrative Law Judge will identify any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

AT 82.

SSR 00-4p requires when an apparent unresolved conflict exists between testimony from a

16

VE and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on that evidence. SSR 00-4P, 2000 WL 1898704, at *2 (SSA Dec. 4, 2000).

In this case, the ALJ failed to identify any conflicts between the occupational evidence provided by the vocational expert and information in the DOT and the Selected Characteristics of Occupations, as required by the Order of the Appeals Council. See also SSR 00-4P, 2000 WL 1898704, at *2. While Defendant notes that Plaintiff "does not point out any discrepancies between [the VE's] testimony and the DOT," it was the ALJ's duty to identify such conflicts. Therefore, the ALJ's failure to follow the instructions of the Appeals Council requires remand.

### 2. Failure to Consider Certain Limitations

Plaintiff argues that the ALJ erred by failing to accept the VE's testimony that an individual who has an untreated anxiety disorder and resultant marked impairment in the ability to respond appropriately to work pressures would be unable to maintain the cited jobs. Dkt. No. 10 at 22-23.

The ALJ is responsible for determining the claimant's capabilities based on all the evidence, and the hypothetical questions must present the full extent of the claimant's impairments to provide a sound basis for the vocational expert's testimony. Colon, 2004 WL 1144059, at *6. Nonexertional limitations include difficulty functioning because a claimant is nervous or anxious. 20 C.F.R. § 404.1569a (c)(1).

In his decision, the ALJ recognized that Plaintiff alleges "problems with untreated anxiety and work pressures." AT 20. The ALJ then stated that "the objective findings in the record do not support an inability to work on a sustained basis given the above-mentioned exertional and non-exertional limitations." AT 20. In addition to the vague reference to "objective findings in the record," it is unclear to what limitations the ALJ is referring. Moreover, while the ALJ then cites to various findings in Dr. Bernier's report, the relevance of these findings is unclear.

17

Accordingly, because the Court is remanding for a proper determination of Plaintiff's RFC, the Court remands on this issue as well.  Upon remand, the ALJ shall obtain the opinion of a VE if Plaintiff's nonexertional limitations present significant limitations.  See Bapp, 802 F.2d at 605-06 (holding that if a claimant's nonexertional impairments "significantly limit the range of work permitted by his exertional limitations" the application of the grids is inappropriate).

### III. CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED**, that the case be **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this Decision and Order; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED:     February 05, 2008
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge